**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**ISAAC JAY WILLIAMS,**

                         **Plaintiff,**

                    **v.**                                  **1:20-CV-589**
                                                                       **(FJS/CFH)**

**OFFICER RYAN JOHNSON, and OFFICER**
**JEFFREY GRENER,** *Individually and as*
*Employees of the City of Albany Police*
*Department***,**

                         **Defendants.**
_____

**APPEARANCES**                                        **OF COUNSEL**

**RYANNE KONAN LAW OFFICE**       **RYANNE G. KONAN, ESQ.**
**& LEGAL SERVICES**
4 Marshall Road
Suite 107
Wappingers Falls, New York 12590
Attorneys for Plaintiff

**THE REHFUSS LAW FIRM, P.C.**       **ABIGAIL W. REHFUSS, ESQ.**
40 British American Blvd.                 **STEPHEN J. REHFUSS, ESQ.**
Latham, New York 12110
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. BACKGROUND**

     Plaintiff commenced this action in May 2020 against Officers Ryan Johnson and Jeffrey Grener, alleging that Defendants falsely arrested him and unreasonably searched and seized him and his property in violation of 42 U.S.C. § 1983. *See* Dkt. No. 1, Compl.; Dkt. No. 11,

Amend. Compl., at ¶¶ 19-72. These causes of action stemmed from an incident in February 2020, in the City of Albany, in which Defendants stopped the pick-up truck that Plaintiff was driving. *See* Dkt. No. 11 at ¶ 1. Defendants allegedly passed the truck while driving in the opposite direction and saw what appeared to be a New York State inspection and registration tag on the windshield but no front license plate and a North Carolina license plate on the back. *See* Dkt. No. 19-1, Defs' Stmt. of Material Facts, at ¶ 5. Defendants turned around and followed the truck, at which point they claim to have seen that one of the truck's rear directional signals was not working properly. *See id.* at ¶ 6. Defendants stopped the truck, informed Plaintiff and his passenger, Ronald Brace,[1] that the truck had a malfunctioning rear directional signal, and asked both occupants for identification, as well as proof of insurance and registration for the vehicle. *See id.* at ¶¶ 11-12. Plaintiff complied, but Mr. Brace was allegedly argumentative at first before ultimately providing his identification to Defendants. *See id.* at ¶ 13. As a result of this inquiry, Defendants confirmed that the truck was registered to Plaintiff's employer. *See id.* at ¶ 15.

After running Mr. Brace's identification, Defendants learned that his information matched the same date of birth and general description of a fugitive from justice wanted in South Carolina, who was also known to have a cauliflower left ear. *See id.* at ¶ 16. Based on those similarities and his apprehension in providing his identification, Defendants surreptitiously checked Mr. Brace's left ear and concluded that he was not the fugitive. *See id.*

---

[1] Mr. Brace filed a separate action before the Court, alleging identical claims and raising the same issues in response to Defendants' motion for summary judgment in his action. *See generally* Case No. 20-CV-588. The Court addresses the merits of Mr. Brace's claims in a simultaneously issued Memorandum-Decision and Order.

at ¶ 18. The traffic stop ended at that point, Defendants did not issue any traffic tickets, and Plaintiff and Mr. Brace were free to go. *See id.* at ¶ 19. [2]

Defendants now move for summary judgment, seeking to dismiss Plaintiff's complaint or, in the alternative, to establish that they are protected from liability under the doctrine of qualified immunity. *See* Dkt. No. 19. Plaintiff opposes Defendants' motion and separately cross-moves the Court to grant summary judgment in his favor by finding the traffic stop unlawful, or, in the alternative, for the Court to find that there is a question of fact as to the stop's lawfulness. *See* Dkt. No. 20. Plaintiff also asserts that the Court should dismiss Defendants' motion because they did not attach appropriate documentation. *See* Dkt. No. 20.

## II. DISCUSSION

### A. Whether the Court should dismiss Defendants' motion for failing to attach the pleadings

Plaintiff argues that Defendants did not submit the complaint, answer, or Defendants' affidavits with their summary judgment motion, which is required under Section 3212(b) of New York's Civil Practice Law and Rules. *See* Dkt. No. 20-3 at 10. Plaintiff also faults Defendants for not submitting affidavits or a response to interrogatories as part of their motion. *See* Dkt. No. 27 at 3-4. According to Plaintiff, "Defendants have submitted their depositions only; and therefore, their motion should be dismissed." *See* Dkt. No. 20-3 at 10.

Contrary to Plaintiff's position, nothing in Rule 56 of the Federal Rules of Civil Procedure requires a movant to attach additional information, such as pleadings, to their motion

---

[2] Although Plaintiff contends that the truck did not have a New York State registration sticker and asserts that the taillight was working properly, he does not dispute that these were the reasons that Defendants proffered as the basis for the traffic stop. *See* Dkt. No. 20-1, Pl's Stmt. of Facts, at ¶¶ 5-11. Plaintiff admits all other facts in this section. *See generally id.*

for summary judgment. *See generally* Fed. R. Civ. P. 56. Pursuant to the Local Rules, "all motions and opposition to motions require a memorandum of law, supporting affidavit when necessary to establish and provide factual and procedural background relevant to the motion, and proof of service on all parties." *See* L.R. 7.1(b). Local Rule 7.1(b) further provides that "[d]ocuments that are on file with the Court in the same action should not be attached as exhibits to the motion papers, but rather should be referenced to the appropriate docket number." *See id.* Summary judgment motions must also include a Statement of Material Facts, and the record for purposes of that statement "includes the pleadings, depositions, answers to interrogatories, admissions and affidavits." *See* L.R. 56.1(a). As these rules do not require that a movant attach the pleadings, affidavits, or responses to interrogatories to their motion for summary judgment, the Court finds that this argument is without merit.

**B. Whether there is an issue of fact as to the traffic stop's lawfulness**

Plaintiff's first and second causes of action for false arrest and unreasonable search and seizure hinge on his argument that Defendants did not have reasonable suspicion or probable cause to stop the truck. "The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . .'" *United States v. Gomez*, 877 F.3d 76, 85-86 (2d Cir. 2017) (quoting U.S. Const. amend. IV). "'Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of [the Fourth Amendment].'" *Id.* at 86 (quoting *Whren v. United States*, 517 U.S. 806, 809-10, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)). "Therefore, traffic stops must satisfy the Fourth Amendment's reasonableness limitation, which 'requires that an officer making a traffic stop have probable cause or reasonable suspicion that the person stopped has committed

a traffic violation or is otherwise engaged in or about to be engaged in criminal activity.'" *Id.* (quoting *United States v. Stewart*, 551 F.3d 187, 191 (2d Cir. 2009) (alterations and emphasis omitted)).

"Probable cause to make a stop exists when an officer 'has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the [suspect] has committed or is committing a crime.'" *Savatxath v. Demer*, No. 3:15-CV-82, 2018 U.S. Dist. LEXIS 239250, *34 (N.D.N.Y. Mar. 31, 2018) (Hurd, J.) (quoting *United States v. Delossantos*, 536 F.3d 155, 158-59 (2d Cir. 2008)). "'Reasonable suspicion requires "some minimal level of objective justification" for suspecting criminal activity.'" *Id.* (quoting *United States v. Bristol*, 819 F. Supp. 2d 135, 141 (E.D.N.Y. 2011) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989))). "'While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop.'" *Id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000) (quoting *Sokolow*, 490 U.S. at 7)).

"Even if lawful at its inception, a traffic stop 'can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution.'" *United States v. Wallace*, 937 F.3d 130, 137-38 (2d Cir. 2019) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 160 L. Ed. 2d 842 (2005)). "Because a traffic stop's 'mission' is to 'address the traffic violation that warranted the stop and attend to related safety concerns . . . [a]uthority for the seizure [] ends when tasks tied to the traffic infraction are – or reasonably should have been – completed.'" *Id.* at 138 (quoting [*Rodriguez v. United States*, 135 S. Ct. 1609,] 1614 [(2015)] (internal citations omitted)). "These tasks include both 'determining

whether to issue a traffic ticket' and conducting 'ordinary inquiries incident to the traffic stop,' such as 'checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.'" *Id.* (quoting [*Rodriguez*, 135 S. Ct.] at 1615).

Plaintiff also alleges a cause of action for false arrest pursuant to 42 U.S.C. § 1983. "'To establish a claim under § 1983 for false arrest a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.'" *Moore v. Keller*, 498 F. Supp. 3d 335, 352 (N.D.N.Y. 2020) (Hurd, J.) (quoting [*Jackson v. City of N.Y.*, 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013)] (citation omitted)); (citing *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012)). "'To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity.'" *Id.* (quoting *Hulett*, 235 F. Supp. 3d at 494 (quoting *Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015))). "'The test for probable cause is an objective one and "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."'" *Id.* (quoting [*Hulett*, 253 F. Supp. 3d at 494] (quoting *Yorzinski v. City of N.Y.*, 175 F. Supp. 3d 69, 75 (S.D.N.Y. 2016))).

Defendants contend that they had reasonable suspicion to stop the truck because of both a malfunctioning rear turn signal and the appearance of a mismatched license plate and registration. With respect to the turn signal, New York's VTL § 375(18) provides that a motor vehicle "shall be equipped with directional signals approved by the commissioner" and "[i]t shall also be unlawful to fail to cause such signals to be maintained, at all times in good and

sufficient working order." N.Y. Veh. & Traf. L. § 375(18).  Notably, in Plaintiff's memorandum of law, he appears to admit that "Defendants noticed that the vehicle's right hand turn signal was blinking fast."  *See* Dkt. No. 20-3 at 11.

In his deposition, Defendant Johnson explained that, as he was following the truck, it made a turn, and he noticed that one of the turn signals was not functioning properly, which is what ultimately triggered Defendants to stop it.  *See* Dkt. No. 19-4 at 27.  Defendant Grener testified at his deposition that he informed Plaintiff and Mr. Brace that the traffic stop was because the truck had a rear signal that was not functioning properly – "either not functioning or it's blinking very fast."  *See* Dkt. No. 19-5, Def. Grener Depo., at 35-36.  Defendant Grener maintained throughout his testimony that it was blinking fast, and when he told Plaintiff that, Plaintiff had allegedly told him that the lightbulb did not have sufficient power, causing it to blink that way.  *See id.* at 48-49.

Mr. Brace testified in his deposition that Defendants informed him and Plaintiff that they were stopped for a faulty light, but he claimed that all the lights were in working order. *See* Dkt. No. 19-6, Brace's Depo., at 25.  However, Mr. Brace also testified that neither he nor Plaintiff got out of the vehicle to inspect the lights while stopped.  *See id.*  After the stop, Mr. Brace allegedly got out of the truck to look at the lights, but he did not walk around to the back of the truck to look at the lights from there.  *See id.* at 34-35.

Plaintiff testified that Defendants informed him that he was stopped because his rear directional light was not working properly, which he was aware was a violation of VTL § 375. *See* Dkt. No. 19-7, Pl's Depo., at 34.  Plaintiff did not state at his deposition that the light was, in fact, working or otherwise dispute that Defendants had reasonable suspicion to pull him over for a faulty turn signal.  *See generally id.*  However, in his affidavit, he attested that, as a diesel

- 7 -

mechanic, he installed the L.E.D. lights on the vehicle, that they last longer than other lights, and they do not strain the battery of the vehicle. *See* Dkt. No. 20-4, Pl's Aff., at ¶ 9. Plaintiff further stated that the Department of Transportation has authorized L.E.D. lights, they are "perfectly legal," and a "fast-blinking bulb does not necessar[il]y mean[] that a bulb is out or that there is a wiring problem in the vehicle." *See id.* at ¶¶ 9-10. According to Plaintiff, L.E.D. lights "blink fast when the turn signal is activated." *See id.* at ¶ 10. Plaintiff also affirmed that he told Defendant Johnson that his lights were not faulty, he turned them on for Defendant Johnson, and he did not receive a traffic ticket for a faulty turn signal. *See id.* at ¶ 16.

Based on the foregoing, Plaintiff and Defendants agree that Defendants claimed to have stopped his truck for a faulty turn signal. Although Plaintiff specifically argues that the signal was functioning properly, he admitted that he knew that driving with a faulty turn signal violated VTL § 375, and Defendants pulled him over for violating that law. Furthermore, even though Plaintiff affirmed that he installed the L.E.D. lights and that they were working properly, he did not get out of his car or check the lights himself to see that they were out. Mr. Brace admitted to checking the lights only after the stop, and he did not walk to the rear of the truck to look at the lights. Additionally, Plaintiff did not submit testimony from a non-party mechanic, videos of the lights, or any other evidence to support his position. Considering all of the evidence, the Court finds that there is not a genuine issue of material fact as to whether the rear turn signal was working properly when Defendants stopped Plaintiff's truck, and Defendants had reasonable suspicion to stop the truck for violating VTL § 375.

Alternatively, the Court further finds that Defendants had reasonable suspicion to stop the truck for having mismatched plates and registration. VTL § 402 requires that all vehicles have license plates that correspond to the certificate of registration and that those plates are

conspicuously displayed on the front and on the rear of the vehicle. N.Y. Veh. & Traf. L. § 402(1)(a). Plaintiff admits in his Statement of Facts that Defendants made "a U-turn, and followed Plaintiff, just because they thought they saw a [New York] registration on the windshield, with no front license plate," leading to Defendants' assumption that the car had been stolen. *See* Dkt. No. 20-1, Pl's Stmt. of Facts, at ¶ 6; Dkt. No. 20-3 at 11. Although Plaintiff denies that the truck had a New York registration or any registration tag on its windshield, he admits that there was not a front license plate on the vehicle, and there was a New York State inspection sticker on the truck's windshield. *See* Dkt. No. 20-1 at ¶¶ 5-6. Plaintiff also attached a photograph of that inspection sticker as an exhibit to his cross-motion. *See* Dkt. No. 20-6, Ex. 3.

As for Defendants, in his deposition, Defendant Johnson stated that he definitely saw a New York inspection sticker and could not recall if there was a registration sticker as well. *See* Dkt. No. 19-4, Johnson Depo., at 18. He explained that, as he was passing the truck, he saw "stickers consistent with what would be required to be on a New York State registered vehicle," but that the vehicle did not have a license plate on the front and had a non-New York plate attached to the back. *See id.* at 19, 23. According to Defendant Johnson, that gave him "an indication that the vehicle was or is registered in New York and potentially stolen, or there is something else going on with that vehicle." *See id.* at 19. He explained that it is "very common for vehicles to be stolen that had the plate off, another plate put on and be driven around." *See id.* at 29.

Based on the foregoing, the Court finds that the absence of a front license plate, combined with what indisputably appeared to Defendants to be documents consistent with a vehicle registered in New York, sufficiently afforded Defendants reasonable suspicion to stop

the vehicle.  The Court therefore concludes that it does not matter that there was not actually a New York registration on the windshield with the New York inspection sticker as Defendants had originally believed.  As long as that belief was objectively reasonable, then it is of no consequence that the vehicle was not in violation of VTL § 402; Defendants had reasonable suspicion to investigate further and to do so by stopping the truck.  Furthermore, the Court finds that Defendants were authorized to check the vehicle's registration, proof of inspection, and Plaintiff's license as incident to the stop; and, thus, Defendants did not violate his Fourth Amendment rights.  *See Wallace*, 937 F.3d at 138.

The Court must also consider whether Defendants had reasonable suspicion to extend the stop beyond the time necessary to determine whether the vehicle was stolen and to determine whether to ticket Plaintiff for his improperly working turn signal.  The only extension of the stop, the entirety of which lasted somewhere between 10 and 12 minutes according to the video footage from Defendants' body cameras and Mr. Brace's recording, occurred when Defendants checked Plaintiff's and Mr. Brace's identifications and discovered that Mr. Brace's birthday and physical build appeared to match that of a fugitive.  *See* Dkt. No. 19-1 at ¶¶ 16, 21.  To confirm whether Mr. Brace was the fugitive, and without wanting to put themselves in danger in case Mr. Brace was a match, Defendants concocted a plan where one officer would pretend to look at the truck's rear lights while checking to see if Mr. Brace had a cauliflower ear on his left side.  *See id.* at ¶¶ 17-18.  After determining that Mr. Brace was not a match and therefore not a wanted fugitive, Defendants let Plaintiff and Mr. Brace go without issuing any traffic tickets.  The Court finds that Defendants had reasonable suspicion to prolong the stop in the interest of safety, and they did not prolong it more than necessary so as to violate Plaintiff's Fourth Amendment rights.

Finally, as the Court concludes that Defendants had reasonable suspicion and probable cause to stop the truck for traffic infractions, it follows that Plaintiff cannot succeed on his false arrest claim.  *See Moore*, 498 F. Supp. 3d at 352; *Stancuna v. Iovene*, No. 3:08-cv-30 (JBA), 2018 U.S. Dist. LEXIS 46524, *13-*14 (D. Conn. Mar. 15, 2018) (stating that "'[p]robable cause is a complete defense to claims of false imprisonment and false arrest.'" (quotation omitted)).  Accordingly, for the above stated reasons, the Court grants Defendants' motion for summary judgment dismissing Plaintiff's complaint in its entirety.

### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment, *see* Dkt. No. 19, is **GRANTED**;[3] and the Court further

**ORDERS** that Plaintiff's cross-motion for partial summary judgment, *see* Dkt. No. 20, is **DENIED**; and the Court further

---

[3] Since the Court dismisses each of Plaintiff's causes of actions on the merits, it does not need to address Defendants' argument that they are entitled to qualified immunity.

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendants and close the case.[4]

**IT IS SO ORDERED.**

Dated: February 18, 2022
       Syracuse, New York

                                        Frederick J. Scullin, Jr.
                                        Senior United States District Judge

---

[4] The Court lastly notes that Plaintiff's counsel's submissions did not meet the standard that is ordinarily expected of attorneys licensed to practice in the Northern District of New York. Mr. Konan repeatedly miscited law, relied on law that was irrelevant, and asserted facts that were not supported anywhere in the record. Notably, these representations violate Rule 11 of the Federal Rules of Civil Procedure. **The Court therefore cautions Mr. Konan that his failure to comply with the Federal Rules of Civil Procedure and this District's Local Rules of Practice in the future may result in sanctions.**